FILED
DISTRICT COURT CLERK
WESTERN DISTRICT OF K Y

2006 SEP 13 PM 3: 57

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA

INDICTMENT

NO. 1:06CR-48-R

18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982
18 U.S.C. § 1512(b)(3)
18 U.S.C. § 1519
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957(a)
28 U.S.C. § 2461

v.

KALEN W. WATKINS (Counts 1-6 and 8)
LAURA LEIGH WELLS (Counts 1 and 9)
KENNETH SCOTT HARRIS (Counts 1 and 9)
CURTIS L. HOPKINS (Counts 1, 5, 7, and 9)
RONALD R. POLLOCK (Counts 1, 4, and 9)
TYRONE N. TACKETT (Counts 1, 3, and 9)

The Grand Jury charges:

## COUNT 1

1. From on or about and between May 1, 1998, and September 30, 2003, in the Western District of Kentucky, Warren County, Kentucky, and elsewhere, the defendants, **KALEN W. WATKINS, LAURA LEIGH WELLS, KENNETH SCOTT HARRIS, CURTIS L. HOPKINS, RONALD R. POLLOCK,** and **TYRONE N. TACKETT,** conspired, confederated, and agreed together with each other to commit mail fraud in violation of Title 18, United States Code, Section 1341.

OBJECT OF THE CONSPIRACY

2.   The objects of the conspiracy were to defraud Fruit of the Loom, Inc., (FOL), by submitting false and fictitious invoices for services that were either never provided or were overpriced and to collect payment on those invoices and to share the proceeds, and to pay kickbacks to **WATKINS** in return for FOL business.

MANNER AND MEANS OF THE CONSPIRACY

3.   It was part of the conspiracy that **WATKINS** was the Director of Environmental Services for FOL.

4.   It was part of the conspiracy that **WELLS** was the owner and operator of Environmental Technology Associates (ETA).

5.   It was part of the conspiracy that **HARRIS** was the owner and operator of Risk Management Group (RMG).

6.   It was part of the conspiracy that **HOPKINS** was the owner and operator of Cobra Coal Company, Inc. (Cobra).

7.   It was further part of the conspiracy that **POLLOCK** was the owner and operator of Pollock & Associates (P&A).

8.   It was further part of the conspiracy that **TACKETT** was the owner and operator of Cyclone, Inc., (Cyclone).

9.   It was further part of the conspiracy that **WATKINS** hired the defendants' companies to work directly for FOL, or required FOL contractors to subcontract work or purport to subcontract work to the defendants' companies.

2

10.    It was a further part of the conspiracy that through their respective companies, defendants submitted false invoices to **WATKINS** and FOL, or FOL's contractors, billing for services that were never rendered, or overbilling for services provided.

11.    It was further part of the conspiracy that through their respective companies, defendants paid kickbacks to **WATKINS** in return for FOL business.

12.    It was further part of the conspiracy that **WATKINS** knowingly authorized FOL's payment of fraudulent invoices, or required FOL's contractors to pay fraudulent invoices.

13.    It was a further part of the conspiracy that the defendants shared their profits with **WATKINS**.

14.    It was a further part of the conspiracy that the defendants used and caused others to use the mails to transmit invoices, checks and other documents necessary to facilitate their scheme.

OVERT ACTS

15.    In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, the defendants committed the following overt acts, among others:

a.    On or about May 21, 2001, **WELLS**, through ETA, submitted an invoice for $40,110 to SCS Environmental Group, LLC, (SCS), a FOL contractor, even though ETA performed no services for SCS.    At **WATKINS'** insistence, SCS paid the invoice in full on

3

June 25, 2001, and **WELLS** deposited the check on June 27, 2001.

SCS passed this expense to FOL.

b. On or about January 8, 2002, **WELLS**, through ETA, submitted an invoice for $10,700 to SCS Environmental (SCS), a FOL contractor, even though ETA performed no services for SCS. At **WATKINS'** insistence, SCS paid the invoice in full on January 16, 2002, and **WELLS** deposited the check on January 22, 2002. SCS passed this expense to FOL.

c. On or about January 31, 2002, **WELLS**, through ETA, submitted an invoice for $25,000 to SCS Environmental (SCS), a FOL contractor, even though ETA performed no services for SCS. At **WATKINS'** insistence, SCS paid the invoice in full on March 5, 2002, and **WELLS** deposited the check on March 7, 2002. SCS passed this expense to FOL.

d. On or about March 21, 2002, **WELLS**, through ETA, submitted an invoice for $25,000 to SCS Environmental (SCS), a FOL contractor, even though ETA performed no services for SCS. At **WATKINS'** insistence, SCS paid the invoice on April 2, 2002, and April 3, 2002, and **WELLS** deposited the checks on April 8, 2002. SCS passed this expense to FOL.

e. On or about May 31, 2002, **WELLS**, through ETA, purchased land from the Bobby McGuyer Trust A for $122,600. The land was deeded from the Bobby McGuyer Trust A to **WATKINS** and his wife.

4

f.  On or about January 24, 2001, **TACKETT**, through Cyclone, submitted an invoice for $40,048 to SCS, a FOL contractor, even though Cyclone performed no services for SCS. At **WATKINS'** insistence, SCS paid the invoice on January 25, 2001. SCS passed this expense to FOL.

g.  On or about September 18, 2001, **TACKETT**, through Cyclone, submitted an invoice for $58,400 to SCS, a FOL contractor, even though Cyclone performed no services for SCS. At **WATKINS'** insistence, SCS paid the invoice on September 20, 2001.  SCS passed this expense to FOL.

h.  SCS used the United States mail to send payments to ETA and Cyclone, and FOL used the United States mail to send payments to SCS.

i.  On or about September 18, 2001, **TACKETT** gave **WATKINS** a check for $73,200, which was deposited in **WATKINS'** bank account on September 25, 2001.

j.  On or about December 20, 2001, **POLLOCK**, through P&A, submitted a $24,268 invoice to FOL for various services.  In fact, P&A did not provide any of the services listed on the invoice.  **WATKINS** nonetheless approved the invoice, and FOL paid the invoice, using the United States mail.

k.  On or about January 24, 2002, **POLLOCK** issued an $18,000 check to **WELLS**, through ETA, for alleged services provided, even though ETA provided no services for **POLLOCK**. In

5

fact, the $18,000 was a kickback to **WATKINS** arising from **WATKINS'** approval of Pollock's fraudulent December 20, 2001 invoice. **WELLS** gave the proceeds of the check to **WATKINS**.

l.  On or about and between May 28, 1998, and December 31, 1999, **HARRIS**, through RMG and at **WATKINS'** insistence, knowingly approved and paid over $200,000 in invoices submitted to RMG by **TACKETT**, through Cyclone, even though **HARRIS** knew that Cyclone had either not provided services to RMG, or had overbilled for services provided.  Through RMG, **HARRIS** passed the costs of those inflated invoices to FOL, and **WATKINS'** authorized payment of those invoices.  FOL sent payment of those invoices in the United States mail.

m.  On or about and between May 1, 1998, and December 31, 1999, on between twenty (20) and fifty (50) occasions, **WATKINS** demanded and received from **HARRIS** cash payments in return for continued FOL business.

n.  On or about October 19, 1999, **HARRIS**, through RMG, paid **WATKINS** $18,650.  The funds were paid by a cashier's check purchased by **HARRIS'** wife and made payable to **WATKINS'** wife, and were deposited on or about October 20, 1999.

o.  On or about December 1, 1999, **HARRIS**, through RMG, paid **WATKINS** $30,000.  The funds were paid by a cashier's check

purchased by **HARRIS'** wife and made payable to **WATKINS'** wife, and were deposited on or about December 3, 1999.

p. On or about September 7, 2001, **WATKINS** sent **HARRIS** an email titled "lotto" in which **WATKINS** instructed **HARRIS**, through RMG, to submit a $28,561 invoice for an upcoming FOL project in Jacksonville, Alabama, purchase order 186542. In his email, **WATKINS** indicated that the $28,561 invoice would result in $11,561 in profit for **HARRIS**, with an additional $10,000 cash payment back to **WATKINS**.

q. On or about September 27, 2001, **HARRIS**, through RMG, submitted a $28,771 invoice to FOL for purchase order 186542, and **WATKINS** approved the invoice for payment. FOL used the United States mail to send payment for RMG's invoice.

r. On or about December 21, 2001, **HARRIS** gave **WATKINS** his kickback from purchase order 186542, and a $7,880 cash deposit was made into **WATKINS'** bank account on December 21, 2001.

s. On or about December 2001, **HOPKINS**, through Cobra, was awarded a contract to supply coal to FOL.

t. On or about and between May 28, 2002, and August 4, 2003, at **WATKINS'** insistence, **HOPKINS** paid kickbacks to **WATKINS**, through **WELLS**, in return for Cobra's contract to provide coal to FOL, as reflected by the following Cobra checks provided to **WELLS**:

1.   #8007, $3,012.59, dated May 28, 2002, payable to ETA even though ETA did no work for Cobra; and

2.   #8053, $3,676.89, dated June 24, 2002, payable to ETA even though ETA did no work for Cobra; and

3.   #8175, $10,028.20, dated September 30, 2002, payable to Laura Wells Consulting, a non-existent company that did no work for Cobra; and

4.   #8379, $6,000, dated January 28, 2003, payable to Laura Wells Consulting, a non-existent company that did no work for Cobra; and

5.   #8415, $6,200, dated February 19, 2003, payable to Laura Wells Consulting, a non-existent company that did no work for Cobra; and

6.   #8494, $5,549.02, dated April 30, 2003, payable to Laura Wells Consulting, a non-existent company that did no work for Cobra; and

7.   #8625, $16,822.10, dated August 4, 2003, payable to Laura Wells Consulting, a non-existent company that did no work for Cobra.

In violation of Title 18, United States Code, Section 371.

The Grand Jury further charges:

### COUNT 2

On or about May 31, 2002, in the Western District of Kentucky, Butler County, Kentucky, the defendant, **KALEN W. WATKINS**, aided and abetted by a person known to the Grand Jury,

8

engaged and attempted to engage in financial transactions in criminally derived property of a value greater than $10,000, in a manner affecting interstate and foreign commerce, that is **KALEN W. WATKINS** acquired land and timber from the Bobby McGuyer Trust A for $288,000, such funds being derived from a specified unlawful activity, namely violation of 18 U.S.C. § 371.

In violation of Title 18, United States Code, Section 1957(a).

The Grand Jury further charges:

<u>COUNT 3</u>

On or about and between January 24, 2001, and September 25, 2001, in the Western District of Kentucky, Warren County, Kentucky, the defendants, **KALEN W. WATKINS** and **TYRONE N. TACKETT**, aided and abetted by each other, knowingly conducted financial transactions affecting interstate and foreign commerce, that is **TACKETT** received $98,448 in fraudulent payments from SCS, and in turn paid **WATKINS** a $73,200 kickback in the form of a check from **TACKETT** payable to **WATKINS**, some or all of which was derived from a specified unlawful activity, namely violation of 18 U.S.C. § 371. **TACKETT** and **WATKINS** knew that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to

conduct such financial transactions **TACKETT** and **WATKINS** knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

The Grand Jury further charges:

### COUNT 4

On or about January 24, 2002, in the Western District of Kentucky, Warren County, Kentucky, the defendants, **KALEN W. WATKINS** and **RONALD R. POLLOCK**, aided and abetted by each other, knowingly conducted financial transactions affecting interstate and foreign commerce, that is **POLLOCK** paid **WATKINS** a kickback in the form of an $18,000.00 P & A check payable to ETA, some or all of which was derived from a specified unlawful activity, namely violation of 18 U.S.C. § 371. **POLLOCK** and **WATKINS** knew that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions **POLLOCK** and **WATKINS** knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

10

The Grand Jury further charges:

### COUNT 5

On or about and between May 28, 2002, and August 4, 2003, in the Western District of Kentucky, Warren County, Kentucky, the defendants, **KALEN W. WATKINS** and **CURTIS L. HOPKINS**, aided and abetted by each other, knowingly conducted financial transactions affecting interstate and foreign commerce, that is **HOPKINS** paid **WATKINS** over $50,000 in kickbacks in the form of Cobra checks payable to ETA or Laura Wells Consulting (listed above in Count 1), some or all of which was derived from a specified unlawful activity, namely violation of 18 U.S.C. § 371. **HOPKINS** and **WATKINS** knew that the transaction was designed in whole or in part to conceal and disguise the location, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions **HOPKINS** and **WATKINS** knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

The Grand Jury further charges:

### COUNT 6

On or about and between September 24, 2003, and November 24, 2003, in Warren County, Kentucky, the defendant, **KALEN W.**

11

WATKINS, aided and abetted by a person known to the Grand Jury, knowingly altered, covered up or falsified records, documents and tangible objects, to wit:  **KALEN W. WATKINS** created fraudulent correspondence from ETA to FOL in response to a Grand Jury subpoena, with the intent to impede, obstruct, and influence a criminal investigation of a matter within the jurisdiction of the United States Department of Justice, Federal Bureau of Investigation.

In violation of Title 18, United States Code, Sections 1519 and 2.

The Grand Jury further charges:

### COUNT 7

On or about February 2006, in Knox County, Kentucky, the defendant, **CURTIS L. HOPKINS**, knowingly corruptly persuaded or attempted to corruptly persuade an individual known to the Grand Jury to engage in misleading conduct toward another person with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission or possible commission of a federal offense.

In violation of Title 18, United States Code, Section 1512(b)(3).

The Grand Jury further charges:

<u>COUNT 8</u>

(FORFEITURE)

As a result of committing offenses in violation of Title 18, United States Code, Section 371, Title 18, United States Code, Section 1957(a), and Title 18, United States Code, Section 1956(a)(1)(B)(i), as alleged in Counts 1 through 6 of this Indictment, felonies punishable by imprisonment for more than one year, the defendant, **KALEN W. WATKINS**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), made applicable by Title 28, United States Code, Section 2461, any and all property, real and personal, which constitutes, or is derived from proceeds traceable to the offenses alleged in Counts 1 through 6 of this Indictment; and pursuant to Title 18, United States Code, Section 982, the defendant, **KALEN W. WATKINS**, shall forfeit to the United States any and all property, real and personal, involved in such offence, or any property traceable to such property, including by not limited to the following:

1.   <u>REAL PROPERTY</u>:

Six farms known as Parcel #1 - Givens Farm, Parcel #2 - Hudnall Farm, Parcel #3 - Brown Farm, Parcel #4 - Lee Farm, Parcel #5 - Rachell Hudnall Farm, and Parcel #6 - Falk Farm located Butler County, Kentucky (book number 159, page number 413), is more particularly described as follows:

<u>Parcel #1 - Givens Farm</u>:

<u>Tract #1</u>:  Lying on the waters of Beggarstaff Creek, beginning on a white oak and two <u>Poast</u>

oak trees, thence N 37 E 90 poles to pointers, N 4 ½ W 58 poles to a Hickory, Dove Caldwell corner; thence with John Moore's line South West to said Moore's corner; thence same direction to William Wooldridge's corner; thence with said line to a Beech and Dog Wood, his corner; thence with his line to a stone; thence S 6 W 31 poles to a cedar; thence S 49 W 30 poles to a sugar tree; thence S 60 E 86 ½ poles to the beginning, containing 60 acres, more or less.

Tract #2:  Beginning on a Stone, William Wooldridge and Sam McCoy's corner; thence with William Wooldridge's line to a double Dog Wood in the G. W. Wooldridge line, Wooldridge's beginning corner; thence in a

Southern direction to Edmond Christmas corner; thence in a South Eastern direction to a sugar tree, Sam McCoy's corner; thence with his line to a Cedar; thence in a Northern direction with McCoy's line to a Stone, the beginning corner.

Tract #3:  Lying on the waters of Beger Staff Creek, begining on a stone set on the side of road leading from J. M. Grise place to Quality on the bank of the above named creek; thence N 42 E 66 ½ poles to a in Sam McCoy's line; thence with his line N 57 ½ W 106 poles to an ash corner to Lee's survey; thence S 22 ½ W 60 poles to a walnut; thence S 67 ½ E 20 ½ poles to a stone; thence S 2 ½ W 28 ½ poles to a stone on the bank of the creek; thence up same with its meanders S 81 3/4 E 28 ½ poles, N 81 ½ E 10 poles, N 49 E 17 3/4 poles to begining, containing 38 acres and 3 rods.

Tract #4:  Begining on a stone on side road Hudnall's corner; thence with creek S 50 E 50 poles to an Elm, a sugar tree as pointer; thence N 24 E 72 poles to a hickory, white and black as pointers; thence N 57 W 26 3/4 poles to a stone in Sam McCoy's line; thence S 44 poles W 63 ½ poles to the begining, containing 15 and 3/4 acres.

There is excepted from the property conveyed as Tracts #3 and #4 the following described part thereof conveyed to Robert A. Lee by Alfred Givens and wife, Maud Givens, by deed

dated December 31, 1949, and of record in the

Office aforesaid in Deed Book 69, page 537, and described as follows:

Beginning at a sugar tree in Christmas line and running thence W with the meanders of the creek to Begger Staff Creek; thence N W with the meanders of said branch to the original Forgy corner; thence N with the original line to a public road; thence E with public road to Begger Staff Creek; thence N with the meanders of said branch to where the Ben Christmas water hole branch converges; thence E with the meanders of said branch to Forgy and Christmas line; thence S with said line to the beginning, containing 10 acres, more or less.

Tract #5:  Begining on a doublec hickory on the road across to the Geo Wooldridge tract, thence running S 3 W 27 ½ to black oak on road; thence S 14 W 29 poles to a double dogwood, also Geo Wooldridge corner; thence S 69 E 48 ½ poles to stone; thence N 50 ½ E 42 poles to a white oak, hickory and dog wood and black in old line; thence N 39 W 51 poles poles to a walnut and hickory and two black oaks; thence N 79 W 37 poles to the begining, containing 23 acres.

Tract #6:  On waters of Begger Staff creek and bounded as follows: Begining at a post oak and two black oaks; thence S to John Moore corner; thence with Edd Goodman line W to a white oak; thence N.W. to J. W. Wooldridge corner; thence with said line N to a black oak; thence E to the begining, supposed to be 25 acres, more or less.

The above described six tracts are subject to an easement granted to Mud River Watershed Conservancy District of Logan, Todd, Muhlenberg and Butler Counties by Alfred Givens and wife, Maud Givens, by easement dated April 11, 1962, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 76, page 214.

The above being the same property conveyed to Pendley Lumber Co., Inc., by Alfred Givens

and wife, Maud Givens, by deed dated August 17, 1992, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 130, page 209.

<u>Parcel #2 - Hudnall Farm</u>:

Three certain tracts of land in Butler County, Kentucky, on the waters of Sandy Branch and bounded and described as follows:

<u>Tract #1</u>:  Bounded on the North by land of Henry Southerland, on the South by land of Edward Wooldridge, on the West by land of Wm. Hudnall, on the East by land of old Cook survey; containing 60 acres, there is excepted from above boundary and not conveyed 10 acres previously sold.

<u>Tract #2</u>:  Beginning on a very old chestnut oak; thence N 14 ½ E 12 ½ poles to a black oak, now gone, and corner to Hudnall; thence with his line N 67 ½ W 16 poles to a stake; thence with a new line to Hudnall N 9 E 63 ½ poles to a sweet gum in horse lot; thence with another new line to <u>Hudnals</u> N 48 ½ W 37 ½ poles to where a small branch enters a large branch; thence up the larger branch with its meanders Hudnall's old line N 62 E 24 poles to another small branch; thence up it S 73 W 4 poles, thence with Hudnal's line N 35 E 11-3/4 poles to a small elm in a fence row corner to same; thence with the fence row S 10 E 87 ½ to the corner of a woods; thence S 13 ½ W 36-4/5 poles to a large white oak; thence S 20 W 32-3/5 poles to a stone on South side of a road at a gate; thence S 56 W 64 poles to the beginning, containing 48 acres, more or less.

<u>Tract #3</u>:  Beginning on a chestnut oak and white oak also corner to T. S. Hudnall, G. H. Hudnal, J. A. Lee and Cora Porter, thence N 55 ½ E 64 poles to a stone, G. H. Hudnall's corner; thence S 18 ½ W 52 poles to a black oak, now C. A. Ewing's corner; thence in a Northwestern direction about 228 yards to the beginning, containing about 5 acres, more or less.

The above being the same property conveyed to Pendley Lumber Company, Inc., by W. T.

Hudnall and wife, Pauline Hudnall, by deed dated October 18, 1990, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 124, page 598.

Parcel #3 - Brown Farm:

Beginning at a hickory 5 poles N 54 W from E. Christmas N. W. corner running N 32 E 48 poles to double dogwood on roadside then N 14 E 29 poles to black oak on same road then N 3 E 27 ½ poles to double hickory on road then N 79 W 53 poles to 2 white oaks then S 11 W 84 poles to white oak and black oak then S 54 E 45 poles to the beginning.

This conveyance is subject to the reservation of a one-sixteenth (1/16) interest in oil, gas, and minerals, and a one-sixteenth (1/16) of royalties, previously conveyed to D. L. Thompson, by deed dated November 12, 1920, or record in Oil and Gas Book 11, page 166, in the Office of the Butler County Clerk.

This conveyance covers and includes any and all real estate surface, coal, oil, gas and all other minerals, easements or estates of sellers which may adjoin or be contiguous to the above property, regardless of any error, omissions, or irregularity in the foregoing property description or the reference; and this conveyance also covers and includes any and all real estate, surface, coal, oil, gas and all other minerals, easements or estates of sellers which may underlie, adjoin or be contiguous to any lands which heretofore may have been excepted from any larger tract of which the above described property was once a part, and regardless of whenever such exception was made.

The above being the same property conveyed to Pendley Lumber Company, Inc., by Suzzanne E. Brown and husband, Charles W. Brown, by deed dated November 6, 1996, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 145, page 594.

Parcel #4 - Lee Farm:

Tract #1:  Beginning at a sugar tree in Christmas line; thence W with the meanders of

the road to Biggerstaff Branch; thence NW
with the meanders of said branch to the
original Forgy corner; thence N with the
original line to public road; thence E with
public road to Biggerstaff Branch; thence N
with the meanders of said branch to where the
Ben Christmas water hole branch converges;
thence E with the meanders of said branch to
Forgy and Christmas line; thence S with said
line to the beginning, containing ten acres,
more or less.

Tract #2:  Lying on the waters of Biggerstaff
Creek, a tributary of Muddy River and
Beginning on a chestnut oak and post oak, J.
Grise's and G. Hudnall's corner; thence with
Hudnall's line N 55 E 64 poles to a stone
corner; thence with Hudnall's line N 55-1/2 E
64 poles to a stone, said Hudnall's corner;
thence S 17-1/2 W 52 poles to a black oak, G.
Wooldridge old corner; thence S 52-1/2 E 52
poles to an ash in Harrison's line; thence S
24-1/2 W 60 poles to a black walnut; thence S
67-1/2 E 20-3/4 poles to a stone and 3
hickories, John Hudnall's corner; thence with
his line S 2-1/2 W 47 poles to creek with
same course in all 59 poles to a stake in
said creek; thence S 69 W 4 poles to 2
willows, G. Hudnall's corner; thence with his
line N 74 W 16 poles to a sycamore; thence
with his line S 29 W 14 poles to an oak and
walnut and redbud still with the meanders of
the creek N 89 W 6 poles to a sycamore N 66 W
6-1/2 poles, S 18-1/2 W 8-3/4 poles, N 36 W
20 poles, N 4 E 8 N 87-1/2 W 10, S 35 W 4 S
5-1/2 W 87 poles, N 16 W 117, N 34 poles to a
black oak, C. A. Lee's corner; thence with
his line N 18 E 40 poles to a stone, N 9-1/2
E 46 poles to black oak, N 8 E 77-3/4 poles
to beginning.

Tract #3:  Beginning on an elm and sugar
tree, N 48-1/2 W 46 poles to a stone; thence
S 59-1/2 W 16 poles to a stone; thence N 82-
1/2 W 38 poles to a stone; thence S 3 W 31
poles to a stone; thence S 52-3/4 E 79 poles
to a black oak and hickory; thence S 6-1/2 E
140 poles to a sugar-tree; thence S 15 E 66
poles to a hickory and ironwood; thence S 64
E 66-1/4 poles to a stone an agreed corner
between John Baugh and J. N. Christmas in the
Perry line, now J. N. Lee; thence N 3 W 60

18

poles to a stone; thence N 7-1/2 W 127 poles to a hickory, William Christmas corner; thence S 31-1/2 W 28 poles to a sugar tree and elm; thence N 75 W 46 poles to a red oak and elm; thence N 21-3/4 W 56 poles to a white oak, now a black oak and sugar tree; thence N 25-1/4 E 57 poles to the beginning, containing 27 acres, more or less.

Tract #4:  One tract of land lying on waters of Biggerstaff Creek and Beginning on a stone in L. C. Forgy line; thence in a Northwestern course to two willows on bank of said creek; thence N 75-1/2 W 14-3/4 poles to the middle of said creek, a sycamore marked as pointers; thence S 28-1/2 W 13-1/4 poles to Burr oak red bail and stone; thence S 89 W 6 poles to a stake in middle of creek, a sycamore marked as pointers; thence S 20 W 4 poles; thence S 32-1/2 W 4; thence S 35 E 4 poles; thence N 77 E 9 poles to an elm; thence 126-1/2 yards to a stone in Christmas line; thence with said Christmas line 103-1/2 poles to the beginning corner, containing 4 acres, more or less.

Tract #5:  Lying on the waters of Biggerstaff Creek a tributary of Mud River, and Beginning on a stone in the East bank of said creek, Grise's corner about 20 feet from creek; thence with Grise line N 27-1/2 W 142 poles to a stone, Grise's corner; thence S 75-1/2 E 11 poles to a poplar and white oak, both dead, a stone in their stead; thence S 69 W 21 poles to a stone in place of a hickory, gone; thence N 51-1/2 E 78 poles to a chestnut oak & post oak, Grise's and G. Hudnall's corner; thence S 8 W 77-3/4 poles to a black oak; thence S 9-1/2 W 46 poles to a stone, a hackberry, a pointer; thence S 18 W 40 poles to a black oak on the creek; thence down same as it meanders S 34 W 16 poles N 48-1/2 W 8 poles, S 35 W 17 poles, N 18 W 8 poles to the beginning.

There is excepted from the above described property a tract of 73 acres, more or less, which was conveyed by Robert Lee, single, to Bobby McGuyer and wife, Barbara McGuyer, and Glennis McGuyer and wife, Robbie McGuyer, by deed dated May 1,1978, and recorded in Deed Book 101, page 79, of the Butler County Court

Clerk's Office, and described as follows, to-wit:

Beginning on a hickory, Bobby McGuyer's corner in the Ben Christmas Heirs line; thence with Ben Christmas heirs line S 31-30 W 462.00 feet to an iron stake; thence continuing with the Christmas line N 75-00 W 759.00 feet to an iron stake, another corner in the Christmas line; thence continuing with the Christmas line N 21-45 W 924.00 feet to an iron stake in Robert Lee's line; thence with Lee's line S 55-01 W 88.00 feet to a hickory, Lee and Bobby McGuyer's corner; thence with McGuyer's line S 06-30 E 2310.00 feet to a sugar tree; thence continuing with McGuyer's line S 15-00 E 1089.00 feet to a hickory in G. H. Grayson line; thence with Grayson line S 64-00 E 1,093.00 feet to a stone, the Moore Brothers corner in Grayson line; thence with a line of the Moore Brothers N 03-00 W 990.00 feet to an iron stake; thence continuing with the Moore Brothers line, passing Bobby McGuyer's corner and with a line of McGuyer N 01-45 W 2240.00 feet to the beginning, containing 73 acres, more or less.

The above being the same property conveyed to Pendley Lumber Company, Inc., by Leonard Pendley and wife, Delisa Pendley, Ronald Pendley and wife, Geneva Pendley, and William Kimmel and wife, Faye Kimmel, by deed dated November 14, 1996, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 145, page 602.

Parcel #5 - Rachel Hudnall Farm:

Beginning at a large Chestnut Oak on the side of a hill, a common corner to Pendley's 103 acre parcel and Pendley and Kimmel's 154 acre parcel (original corners to J. Gross and G. Hudnall); thence from said beginning and with Pendley & Kimmel, South 38-02-58 West 1287.0 feet to an iron pin and cap marked LS 2474; thence with same, North 69-49-24 West 334.25 feet to a post, corner to Dee Grise; thence with Grise and a fence, North 08-00 East 670.12 feet to a post; thence with same, South 81-31-27 West 237.73 feet to a post; thence with said line and fence, North 73-23-

58 West 526.83 feet to a post on the East shore of Mud River Conservancy District Flood Retarding Structure No. 45; thence with Grise, North 67-19-30 West 82.0 feet, more or less, to a point in Grise's line in said lake (formerly a post near the original stream channel), a corner to the T. Hudnall Heirs; thence with said heirs, and the original stream channel, North 10-14-34 East 392.07 feet to a point on the North shore of said lake; thence with the Hudnall Heirs, following the centerline of Sandy Branch for the next eleven (11) calls as follows: North 27-43-53 East 167.25 feet, North 52-08-51 East 81.55 feet, North 56-41-34 East 37.76 feet, North 20-31-15 East 63.89 feet, North 16-53-51 East 129.25 feet, North 09-09-22 East 60.97 feet, North 20-01-44 East 433.92 feet, North 26-10-08 East 206.65 feet, South 82-34-32 East 95.16 feet, North 33-00-48 East 298.89 feet, and North 68-21-48 East 123.75 feet, to a point in Sandy Branch, corner to Pendley's 103 acre tract; thence with Pendley, passing a reference iron pin and cap at 25.0 feet, on the East bank of the creek, South 53-40-40 East 618.80 feet, to an iron pin and cap; thence with same South 12-20-16 West 1047.80 feet to an iron pin and cap; thence with said line South 80-56-50 East 264.00 feet, to an iron pin and cap; thence continuing with Pendley's line, South 01-03-10 West 206.30 feet, to the beginning, containing 60.986 acres, more or less, according to survey by Frank J. Kondracki, Jr., R.L.S. #2474, on February, 1992.

The above being the same property conveyed to Pendley Lumber Company, Inc., by Maggie Pendley, a widow, by deed dated May 27, 1992, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 129, page 312.

Parcel #6 - Falk Farm:

Beginning at an iron pin on the South right of way of Highway 1153, corner of J. V. Gardner, Deed Book 126, page 485; thence with the South right of way of Highway 1153, S 54-22 W 491.98 feet; S 64-33 W 50.70 feet; thence S 75-50 W 51.74 feet; thence S 86-28 W 51.85 feet; N 83-36 W 51.72 feet; N 74-09 W

51.62 feet; thence N 65-28 W 201.56 feet; N 61-20 W 200.65 feet; thence N 57-42 W 300.75 feet; thence N 61 W 299.33 feet; thence N 58 W 100.57 feet; N 46-54 W 101.86; thence leaving said right of way, S 4-30 E 134 feet to a stone, corner of Byron Harper, Deed Book 110, page 417; thence with the line of Byron Harper, S 58-10 E 181.00 feet to a stone; thence S 14-20 E 213.00 feet to a stone; thence N 84-55 W 340.00 feet to a stone, corner of Pendley Lumber Co., Deed Book 124, page 598; thence with the line of Pendley Lumber Co., S 14-37 W 639.58 feet, to a white oak stump, corner of Alfred Givens, Deed Book 54, page 314; thence initially with the line of Alfred Givens, Deed Book 54, page 314, and subsequently with the line of J. V. Gardner, Deed Book 126, page 485, S 76-41 E 1848 feet, to an iron pin; thence N 11-49 E 1059.3 feet to the beginning, containing approximately 32 acres, more or less, as surveyed on August 5, 1992, by John N. Tinsley, Ky. Reg. L.S.

The above being the same property conveyed to Leonard Pendley, by David Falk and wife, Kathy Falk, by deed dated November 25, 1994, and now of record in the Office of the Clerk of Butler County, Kentucky, in Deed Book 138, page 211.

2.    CURRENCY:

a.    $62,841.70 in United States funds seized from USBank Account $XXXXX4599 held in the name of Kalen and Lori Watkins;

b.    $3,416.09 in United States funds seized from USBank Account $XXXXXXXX7788 held in the name of Biggerstaff Creek Outfitters.

3.    MONEY JUDGMENT:

A sum of money equal to the total amount of money involved in each offense and which represents the proceeds of each offense, no less then $1,000,000 in United States currency,

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, **KALEN W. WATKINS**,

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of he court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

In accordance with Title 18, United States Code, Section 981(a)(1)(C), made applicable by Title 28, United States Code, Section 2461, Title 18, United States Code, Section 982, and Rule 32.2.(a), Federal Rules of Criminal Procedure.

The Grand Jury further charges:

<u>COUNT 9</u>

(FORFEITURE)

As a result of committing an offense in violation of Title 18, United States Code, Section 371, as alleged in Count 1 of this Indictment, a felony punishable by imprisonment for more than one year, the defendants, **LAURA LEIGH WELLS, KENNETH SCOTT HARRIS, CURTIS L. HOPKINS, RONALD R. POLLOCK,** and **TYRONE N. TACKETT**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, any and all property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of said offense, and any and all of the defendant's property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation alleged in Count 1 of this Indictment.

In accordance with Title 18, United States Code, Section 982.

A TRUE BILL.

FOREPERSON

DAVID L. HUBER
UNITED STATES ATTORNEY

DLH:DRW:2006/09/13

25

UNITED STATES OF AMERICA v. Kalen W. Watkins, Laura Leigh Wells, Kenneth Scott Harris, Curtis L. Hopkins, Ronald R. Pollock, and Tyrone N. Tackett

### P E N A L T I E S

```
Count 1:  NM  5 yrs./$250,000/both/NM 3 yrs. Supervised Release
Count 2:  NM 10 yrs./$250,000/both/NM 3 yrs. Supervised Release
Count 3:  NM 20 yrs./$500,000/both/NM 3 yrs. Supervised Release
Count 4:  NM 20 yrs./$500,000/both/NM 3 yrs. Supervised Release
Count 5:  NM 20 yrs./$500,000/both/NM 3 yrs. Supervised Release
Count 6:  NM 20 yrs./$250,000/both/NM 3 yrs. Supervised Release
Count 7:  NM 10 yrs./$250,000/both/NM 3 yrs. Supervised Release
```

### N O T I C E

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | |
|---|---|---|
| Misdemeanor: | $ 25 per count/individual | Felony: $100 per count/individual |
| | $125 per count/other | $400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due _immediately_ unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following:**

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

> For offenses occurring after December 12, 1987:

> No **INTEREST** will accrue on fines under $2,500.00.

> **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

> **PENALTIES** of:

> 10% of fine balance if payment more than 30 days late.

> 15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is

paid.

       18 U.S.C. §§ 3612, 3613

             If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law.  18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

    1.    That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

    2.    Give bond for payment thereof.

    18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

      LOUISVILLE:        Clerk, U.S. District Court
                           106 Gene Snyder U.S. Courthouse
                           601 West Broadway
                           Louisville, KY  40202
                           502/625-3500

      BOWLING GREEN:    Clerk, U.S. District Court
                           120 Federal Building
                           241 East Main Street
                           Bowling Green, KY  42101
                           270/393-2500

      OWENSBORO:        Clerk, U.S. District Court
                           126 Federal Building
                           423 Frederica
                           Owensboro, KY  42301
                           270/689-4400

      PADUCAH:         Clerk, U.S. District Court
                           127 Federal Building
                           501 Broadway
                           Paducah, KY  42001
                           270/415-6400

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

FORM DBD-34
JUN.85

No. 1: D6CR-48-R

# UNITED STATES DISTRICT COURT
Western District of Kentucky
Bowling Green Division

## THE UNITED STATES OF AMERICA

vs.

KALEN W. WATKINS; LAURA LEIGH WELLS;

KENNETH SCOTT HARRIS; CURTIS L. HOPKINS;

RONALD L. POLLOCK; TYRONE N. TACKETT

## INDICTMENT

**Title 18, U.S.C. § 371; 1957(a); 1956(a)(1)(B)(i) and 2; 1519; 1512(b)(3); 981(a)(1)(C); 982; Title 28, U.S.C. § 2461:**
**Conspiracy to Commit Mail Fraud; Engaging in Monetary Transactions in Property Derived from Unlawful Activity; Money Laundering; Altering, Covering Up or Falsifying Records, Documents and Tangible Objects With Intent to Impede Criminal Investigation; Aiding and Abetting; Attempt to Persuade Witness to Engage in Misleading Conduct to Hinder Investigation; Forfeiture.**

*A true bill.*



*Foreman*

*Filed in open court this* 13th day,

*of* September A.D. 2006.

*Clerk*

*Bail, $*