*Filed in Open Court*
*4-2-07*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN

UNITED STATES OF AMERICA                              **PLAINTIFF**

v.                              CRIMINAL No. 1:06-CR-48-06-TBR

TYRONE N. TACKETT                              **DEFENDANT**

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by David L. Huber, United States Attorney for the Western District of Kentucky, and defendant, Tyrone N. Tackett, and his attorney, Samuel Manly, have agreed upon the following:

1.   Defendant acknowledges that he has been charged in the Indictment in this case with violations of Title 18, United States Code, Sections 371 and 1956(a)(1)(B)(i).  Defendant further acknowledges that the Indictment in this case seeks forfeiture of any and all property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of said offense, and any and all of the defendant's property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation alleged in Count 1 of the Indictment pursuant to Title 18, United States Code, Section 982.

2.  The parties agree that before the defendant enters a plea of guilty pursuant to this Agreement:

(A)  the United States will move the Court to amend Count 3 of the Superseding Indictment, which charges the defendant with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), so as to reflect that the "specified unlawful activity" is violation of 18 U.S.C. § 1341 (mail fraud), rather than violation of 18 U.S.C. § 371 (conspiracy);

(B)  the defendant will interpose no objection to that motion;

(C)  the defendant will acknowledge that the amendment to Count 3 alluded to in subparagraph (A) of this numerical paragraph 2 will not result in a material variance from the language of Count 3 contained in the Superseding Indictment; and

(D)  the defendant will waive any right that he may have to a grand jury indictment on Count 3, as amended in accordance with subparagraph (A) of this numerical paragraph 2.

3.  Defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorney.  Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.   Defendant will enter a voluntary plea of guilty to Counts 1 and 3 in this case.  Defendant will plead guilty because he is in fact guilty of the charges.  The parties agree to the following factual basis for this plea:

At all relevant times, Fruit of the Loom (FoL) was an assumed name of Union Underwear Company, Inc., a New York corporation.  FoL had a place of business in Bowling Green, Warren County, Kentucky, in the Western District of Kentucky.

At all relevant times, defendant Kalen W. Watkins was the Director of Environmental Services for FoL.

At all relevant times, defendant Kenneth Scott Harris was the owner and operator of Risk Management Group, Inc. (RMG), a Kentucky corporation, and RMG was an FoL contractor.

At all relevant times, SCS Environmental Group, LLC (SCS) was an FoL contractor.

At all relevant times, defendant Tyrone N. Tackett was the owner and operator of Cyclone, Inc. (Cyclone), a Kentucky corporation, and Cyclone was an FoL subcontractor.

In and around the spring of 1999, Watkins and Harris asked Tackett if they could run money through Cyclone. Tackett agreed, and on June 1, 1999, at the behest of

Watkins and Harris, Tackett caused Cyclone to submit a $53,540 invoice to RMG for services allegedly provided by Cyclone as a subcontractor to RMG on an FoL project in Rockingham, North Carolina.   At the time, Tackett, Watkins and Harris all knew that none of these services were actually provided.   Harris caused RMG to pass the cost represented by the invoice on to FoL, and Watkins caused FoL to send payment thereof to RMG by means of the United States Mail.   Harris in turn caused RMG to pay the amount of the invoice to Cyclone.   Once payment was received, Tackett gave Harris and Watkins the $53,540.

In late 2000 or early 2001, Watkins and Harris again asked Tackett if they could run money through Cyclone. Tackett agreed, but this time Tackett insisted on receiving a portion of the proceeds.   On January 24, 2001, Tackett caused Cyclone to submit a $40,048 invoice to SCS, an FoL contractor, even though Cyclone performed no services for SCS.   SCS paid the invoice later that month.   SCS passed this $40,048 expense on to FoL.   FoL sent payment to SCS by means of the United States Mail, and SCS in turn sent payment to Cyclone by means of the United States Mail.

On September 18, 2001, Tackett caused Cyclone to submit another $58,400 invoice to SCS, an FoL contractor, even though Cyclone provided no services for SCS.   SCS paid this invoice

later that month.    SCS passed this $58,400 expense on to FoL. FoL sent payment to SCS by means of the United States Mail, and SCS in turn sent payment to Cyclone by means of the United States Mail.

On or about September 18, 2001, Tackett gave Harris a check for $73,200, made payable to Watkins, representing Watkins' and Harris' share of the bogus SCS invoices.  Tackett kept the remaining $25,248.

The United States mail was used to further the scheme to defraud FoL.  The bogus $98,448 in invoices Cyclone submitted to SCS, and the $73,200 kickback the defendant paid to Watkins by check, were designed to conceal and disguise the location, ownership and control of the proceeds of the conspiracy to defraud FoL.

5.    Defendant understands that the charges to which he will plead guilty carry a combined maximum term of imprisonment of 25 years, a combined maximum fine of $500,000, and a five year term of supervised release.  Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583.

6.    Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that he will then be subject to certain conditions of release.  USSG §§5D1.1, 5D1.2, 5D1.3.

APR-02-2007 MON 03:53 PM US ATTORNEY WDKY-10TH FL    FAX NO. 502 582 5097         P. 07

7.    Defendant understands that by pleading guilty, he surrenders certain rights set forth below. Defendant's attorney has explained those rights to him and the consequences of his waiver of those rights, including the following:

A.    If defendant persists in a plea of not guilty to the charges against him, he has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

B.    At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

C.   At a trial, defendant would have a privilege against self-incrimination and he could decline to testify, without any inference of guilt being drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

8.   Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing.  Defendant admits all acts and essential elements of the indictment counts to which he pleads guilty.

9.   Defendant understands that the United States will inform the court that it should order payment of restitution to FoL, and the United States understands and agrees that the defendant may argue for a lesser amount without thereby breaching this Agreement. The defendant further understands that he may be responsible for a fine, costs of prosecution, costs of incarceration and supervision, any or all of which may be required by the judgment of the court.

10. Defendant acknowledges liability for the special assessment of $100.00 per felony count of conviction mandated by 18 U.S.C. § 3013(a)(2)(A) and will pay the assessment in the amount of $200.00 to the United States District Court Clerk's Office by the date of sentencing.

11.   At the time of sentencing, the United States will

- recommend a sentence of imprisonment at the lowest end of the applicable Guideline Range;[1]

- recommend a special assessment of $200.00, pursuant to 18 U.S.C. § 3013(a)(2)(A), to be due and payable on the date of sentencing;[2]

- recommend a reduction of 3 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided by USSG §3E1.1(a) and (b), provided the defendant does not engage in future conduct which violates a condition of bond, constitutes obstruction of justice, or otherwise demonstrates a lack of acceptance of responsibility. Should such conduct occur and the United States, therefore, opposes the reduction for acceptance, this plea agreement remains binding and the defendant will not be allowed to withdraw his plea.

- consider making a motion pursuant to USSG §5K1.1, stating the extent to which the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Whether or not to make such motion shall be in the sole discretion of the United States Attorney.

12.   Defendant agrees to have his sentence determined pursuant to the Sentencing Guidelines, subject to the provisions of 18 U.S.C. § 3553(a); waives any right to have facts that determine his offense level under the Guidelines (including facts that support

---

[1]   No mandatory minimum term of imprisonment is required by law.

[2]   The defendant acknowledges that he has read the Notice and Penalty Pages of the Superseding Indictment; that he understands the interest and penalty provisions applicable to fines and special assessments imposed and included in the judgment entered by the Court; and that those pages are incorporated herein by reference.

any specific offense characteristic or other enhancement or adjustment) alleged in an indictment and found by a jury beyond a reasonable doubt; agrees that facts that determine the offense level will be found by the court at sentencing by a preponderance of the evidence and that the court may consider any reliable evidence, including hearsay; and agrees to waive all constitutional challenges to the validity of the Sentencing Guidelines.

13. Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Defendant:

(a) knowingly and voluntarily waives the right to take a direct appeal of his conviction pursuant to FED. R. APP. P. 4(b) and 18 U.S.C. § 3742; and

(b) knowingly and voluntarily waives the right to contest or to attack his conviction collaterally pursuant to 28 U.S.C. § 2255 or otherwise;

(c) retains the right to take a direct appeal, pursuant to FED. R. APP. P. 4(b) and 18 U.S.C. § 3742, from any sentence that is imposed on him:

    (i) in violation of law;

    (ii) as a result of an incorrect application of the sentencing guidelines; and/or

    (iii) is outside the applicable guideline range; and

(d)    retains the right to attack his sentence collaterally pursuant to 28 U.S.C. § 2255 or otherwise.

Defendant understands and agrees that nothing in this plea agreement should be construed as a waiver by the United States of its right to appeal the sentence under 18 U.S.C. § 3742.

14.    Defendant understands and agrees that complete and truthful cooperation is a material condition of this Agreement. Defendant understands that such cooperation shall be provided to any state, local, and federal law enforcement agencies designated by counsel for the United States. Cooperation will include:

A.    providing all information known to defendant regarding any criminal activity, including but not limited to the offenses described in this Agreement;

B.    complying with all reasonable instructions from the United States;

C.    submitting to interviews by investigators and attorneys at such reasonable times and places to be determined by counsel for the United States; and

D.    testifying fully and truthfully before any grand juries or at any trials or proceedings where defendant's testimony is deemed by the United States to be relevant.

15. The defendant agrees that any statements made during the cooperation phase of this Agreement may be used against defendant in any subsequent civil or criminal prosecutions, not including this prosecution.

16. In the event the United States believes defendant has failed to fulfill any obligations under this Agreement, then the United States shall, in its discretion, have the option of being relieved of its obligations under the plea agreement. Whether or not defendant has completely fulfilled all of the obligations under this Agreement shall be determined by the United States.

17. Defendant and the United States agree that in the event the defendant has breached the Agreement:

A. Defendant will not be permitted to withdraw any guilty plea tendered under this Agreement and agrees not to petition for withdrawal of any guilty plea;

B. The United States will be free to make any recommendations to the Court regarding sentencing in this case;

C. Any evidence or statements made by defendant during the cooperation phase will be admissible at any trials or sentencing;

D. The United States will be free to bring any other charges it has against defendant.

18.  Defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the accompanying defendant's Affidavit, and will submit to an investigation by the Financial Litigation Unit of the United States Attorney's Office for the purpose of insuring prompt satisfaction of all fines, restitution, and special assessments resulting from his guilty plea.

19.  This Agreement is entered into by the United States on the basis of the express representation of defendant that he is making a full and complete disclosure of all assets over which he exercises control.

20.  Defendant agrees to waive any double jeopardy challenges that defendant may have to any administrative or civil forfeiture actions arising out of the course of conduct that provide the factual basis for this Indictment.  Defendant further agrees to waive any double jeopardy challenges that defendant may have to the charges in this Indictment based upon any pending or completed administrative or civil forfeiture actions.

21.  Defendant waives and agrees to waive any rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed until the cooperation phase has been completed and title to all assets has fully vested in the United States.  The reason for such waiver is so that at sentencing the Court will have the benefit of all relevant information.

22.   Nothing in this Agreement shall protect defendant in any way from prosecution for any offense committed after the date of this Agreement, including perjury, false declaration, or false statement, in violation of 18 U.S.C. §§ 1621, 1623, or 1001, or obstruction of justice, in violation of 18 U.S.C. §§ 1503, 1505, or 1510, should defendant commit any of those offenses during the cooperation phase of this Agreement.   Should defendant be charged with any offense alleged to have occurred after the date of this Agreement, the information and documents disclosed to the United States during the course of the cooperation could be used against defendant in any such prosecution.

23.   Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, whether or not presently known to defendant, arising out of the investigation or prosecution of the offenses covered by this Agreement.

24.   Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning defendant and this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of defendant's documents, or documents

of third persons, in possession of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service.

25. It is understood that pursuant to Fed. R. Crim. P. 11(c)(1)(B), the recommendations of the United States are not binding on the Court. In other words, the Court is not bound by the sentencing recommendation and defendant will have no right to withdraw his guilty plea if the Court decides not to accept the sentencing recommendation set forth in this Agreement.

26. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his attorney, of all mitigating factors. Defendant agrees that the remedy for any breach of this Agreement by defendant is that the United States is relieved of its obligations under this Agreement, but defendant may not withdraw his guilty plea because of his breach.

27. This document states the complete and only Plea Agreement between the United States Attorney for the Western District of Kentucky and defendant in this case, and is binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court.

No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

**AGREED:**

DAVID L. HUBER
United States Attorney

By:

_____        April 2, 2007
David Weiser                                                      Date
Assistant U.S. Attorney

I have read this Agreement and carefully reviewed every part of it with my attorney.  I fully understand it and I voluntarily agree to it.

_____        April 2, 2007
Tyrone N. Tackett                                              Date
Defendant

     I am the defendant's counsel.  I have carefully reviewed every part of this Agreement with the defendant.  To my knowledge my client's decision to enter into this Agreement is an informed and voluntary one.

_____        April 2, 2007
Samuel Manly                                                   Date
Counsel for Defendant
 Tyrone N. Tackett

DLH:DRW:SM

N:\DWeiser\Watkins, Kalen\Tackett, Tyrone\pleaagreement3.wpd

Page 15 of 15 Pages